## Stover *against* Metzgar.

All the negotiations between the parties to a contract made by a written correspondence form a part of it, and must be considered in giving it a construction. And if it appear that one of the parties was negotiating for himself as well as for others, each of whom was to perform a separate part of the contract, and this was known and understood by the other party, he cannot look to one for damages consequent upon the failure to perform the conditions of the contract by all.

ERROR to the Common Pleas of *York* county.

John Metzgar against Michael Stover. This was an action on the case, in which the plaintiff declared for money laid out and expended for the use of the defendant. On the trial of the cause, the plaintiff asked leave to file the following special count, which was objected to by the defendant, but allowed by the court, who sealed a bill of exception thereto, at the instance of the defendant:

I.—x*

[Stover v. Metzgar.]

John Metzgar )
    *v.*    }   York county ss.
Michael Stover. )

And the plaintiff, John Metzgar, also complains of the defendant, Michael Stover, in a plea of trespass on the case upon promises, &c. For that, whereas, heretofore, to wit, on the day and year first aforesaid, at said county, to wit, at Philadelphia, the said plaintiff was a general agent for the procuring of loads of merchandise to be conveyed in wagons and other conveyances from the said city of Philadelphia to Pittsburg and other places westward by such persons as had teams or conveyances for that purpose, and afterwards, to wit, on the day and year aforesaid, at said county, the defendant knowing the premises, in consideration that the plaintiff would for certain reward procure and send to him, the defendant, three loads of store goods, to Wrightsville, as soon as possible, that is, one load for Joseph King, to weigh about fifty hundred, one for Peter Gise, to weigh about from fifty to fifty-five hundred, and one for defendant to weigh about fifty and not more than fifty-two hundred, to be conveyed to Pittsburg, the said defendant then and there undertook and promised the plaintiff that he would receive the said loads, and cause them to be conveyed to Pittsburgh aforesaid; and the plaintiff avers that he, relying on the said promise and undertaking of the defendant, did procure and send to the defendant at Wrightsville three loads of store goods as aforesaid, and that afterwards, to wit, on the day and year aforesaid, at said county, the said loads did arrive at Wrightsville for the said defendant, of all which the said defendant afterwards, to wit, on the day and year aforesaid, at said county, had notice; yet the plaintiff says that the said defendant, not regarding his said promise and undertaking, but intending to deceive and defraud the plaintiff in this behalf, did not nor would receive the said loads and cause them to be conveyed to Pittsburg as he had undertaken aforesaid, but wholly neglected and refused to do so, and also for that whereas heretofore to wit, on the day and year first aforesaid at said county, to wit, at the city of Philadelphia, the said plaintiff was engaged and occupied in and about the business and employment of procuring from merchants and others loads of merchandise in boxes, bales and parcels, to be conveyed by teamsters in wagons or carriages from such point as they might desire the same to be delivered at, to such other place in the route of the destination of said loads as the said teamsters might agree to haul the same to; the said plaintiff in the premises undertaking that the said load should be received, hauled and delivered safely and expeditiously within a limited time, and therein relying on the undertaking of the teamsters who might order the loads, to receive, haul and deliver the same in the manner aforesaid; and the defendant on the said day

[Stover v. Metzgar.]

and year, at said county, knowing the premises, in consideration that the plaintiff would, at his request, for certain reward, send him three other loads of store goods to Wrightsville, as soon as possible, one for Joseph King, to weigh about fifty hundred, one for Peter Gise to weigh from fifty to fifty-five hundred, and one for himself of about fifty and not more than fifty-two hundred, the loads to be kept separate, and not to be sent if wages were under three dollars, and to be *for Pittsburg*, and to be handy loads, undertook and then and there faithfully promised the plaintiff to cause the said loads to be received at Wrightsville aforesaid, and hauled and delivered at Pittsburgh aforesaid with reasonable expedition; and the plaintiff avers that he, relying on the said promise and undertaking of the defendant, afterwards, to wit, on the said day and year at said county, to wit, Philadelphia, did send the said loads in manner and form as the defendant required as aforesaid, and that afterwards, to wit, on the said day and year, the said loads did arrive at Wrightsville aforesaid, of all which defendant had notice; yet the said defendant did not nor would receive or cause to be received the said loads, nor haul and deliver the same, or cause to be hauled or delivered at Pittsburg aforesaid, but wholly neglected and refused to do so; and the plaintiff avers that in order to procure the said loads in the above several counts mentioned according to the usage in that behalf established, he gave a receipt to the persons from whom the same were obtained, and undertook and promised that the same should be safely and expeditiously conveyed and delivered at Pittsburg aforesaid, and in default of delivery within a certain number of days, to wit, twenty days from the receipt thereof, the plaintiff would pay or cause to be paid a sum of money equal to the price per hundred of hauling in teams as aforesaid, multiplied by the number of days beyond the period within which the said loads ought to be delivered according to the stipulation aforesaid, all of which was known to the defendant, to wit, on the day and year aforesaid, at said county; and the plaintiff further says that by reason of the promises he was forced and compelled to pay a large sum, to wit, four hundred and fifty dollars for the time over the limited period in which said loads ought to have been delivered as aforesaid, and was also forced and obliged to procure other teamsters to receive said loads at Wrightsville, and to haul and deliver the said loads at Pittsburg aforesaid, and was also put to great expense and trouble in the premises, and by reason of said neglect of the defendant—delay in delivering said loads, the plaintiff lost the confidence and custom of many persons who had employed and would still have employed the plaintiff in his business as aforesaid. By reason of said several premises, the plaintiff hath suffered damage nine hundred dollars, and therefore suit is brought.

[Stover v. Metzgar.]

Upon the evidence given, which is fully stated in the opinion of the court, the court below was of opinion that the plaintiff was entitled to recover the whole amount of damages from the present defendant.

*Ramsey*, for plaintiff in error. The court below should not have permitted the plaintiff to recover; because it distinctly appears that the present defendant contracted but for one load of goods for himself, and the plaintiff never intended to intrust him with more than one; for he specially instructs the warehouse men at Wrightsville that but one load is to be delivered to Stover, and one to each of the others, who were as much carriers, *quo-ad hoc*, as Stover. But the defendant, upon the proof given, was not liable at all. By calling repeatedly at the Post Office for six consecutive days, when he might have expected to be advised by the plaintiff of the forwarding of the goods, he exhibited his willingness and readiness to perform his engagement.

The court should not have permitted the plaintiff to file the new count, which changed the cause of action. 2 *Rawle* 337.

*Mayer* and *Evans*, for defendant in error. The contract of the parties, as exhibited by the evidence, presented to the jury a question of intention. The plaintiff knew no one but the defendant; his correspondence was with him alone, and any separation which was made of the loading, was at the instance of the defendant, at his request and for his convenience; the plaintiff knew not how the others were to be employed, *otherwise than* by Stover; they may have been hirelings; the plaintiff had no contract with them, nor would he have, under any circumstances, a right of action against them for a violation of contract, for they had made none. The plaintiff is exceedingly careful in his obedience to the special instructions of the defendant, with regard to separation of the goods into particular parcels; and for this, it is argued, he is to be defeated in the prosecution of his claim.

As to the count allowed by the court, it is but a specification of the first, and not at all repugnant to it. 2 *Whart.* 159; 1 *Whart.* 287; 2 *Serg. & Rawle* 1; 1 *Whart.* 11.

The opinion of the Court was delivered by

HUSTON, J. — This case presented the following facts: John Metzgar was engaged in the city of Philadelphia in engaging loading for carriers, which they were to carry to Pittsburg and other places. The goods to be carried were sent by the railroad to Wrightsville, and delivered in warehouses; at which place they were loaded in wagons for Pittsburg. Michael Stover resided in York county, some miles distant from Wrightsville; he wrote a letter as follows:

[Stover v. Metzgar.]

" February 2d, 1841.

" Mr John Metzger,

" Sir—I request of you to send me three loads of store goods
to Wrightsville, as soon as possible.  *Wee* want the loads as fol-
lowing : Joseph King, to weigh about 50 hund : Peter Gise about
50 to 55 hund : and mine about 50 or not more than 52 hund.
*Pleas* and keep the loads separate, and do not send the loads if
the wages *is* much under three dollars, as *wee* cannot afford to
*hall,* for much less.  We want the loads for Pittsburg, and if you
cannot send the loads *pleas* and let me know as soon as this comes
to hand.  Send us handy loads as our wagon beds *is* small.
*Pleas* and do the best for us that you possibly can, and if wages
*is* on the rise rather hold on a day or two.

" I thought proper to state this to you, as some of your friends
*wer oposed* to sending to you as they complain that you have over-
charged some of them,

" I remain yours most respectfully,
                                    MICHAEL STOVER.

" Direct to Farmers' P. O. York county, Penna."

On the face of this letter, perhaps Stover might appear answer-
able to Metzgar for the carriage of the three loads; but Metzgar
had a right to a share in making the contract; and if it appear
that he did not send three loads to Stover, or put any more than
one load to his care and under his control, it is not easy to see
how Stover is liable for neglect in not carrying what was never
put in his power or under his control.

Turner Morehead, a witness on behalf of the plaintiff, said,
" On the 7th of February 1839, I delivered to John Metzgar, as
directed by an order from Michael Stover, which I hereto attach
marked A, three wagon loads of goods as follows :

> One load for Michael Stover himself,
> One load for Joseph King, and
> One load for Peter Gise.

" John Metzgar receipted for the said three wagon loads in my
wagon-book, in the words following : ' Philadelphia, 7th February
1839, Received of T. Morehead the following goods in good order,
which I promise to deliver in like good order to the following per-
sons in Pittsburg, Pa., within twenty days, they paying carriage
at the rate of $3 per 100 lbs. with charges.'

" On the 7th or 8th of the same month, (February) I saw the
said John Metzgar write a letter to the said Michael Stover, and
direct it to him at Farmers' Post Office, York county, Pa., giving
him notice to call at Futhey & Smith's, at Wrightsville, for the
above loads.  The same day on which Metzgar wrote the letter
to M. Stover, he wrote another to Futhey & Smith, at Wrights-
ville, enclosing the way-bill for each load.  The same day on
which John Metzgar wrote these two letters, I saw him seal and

I.— 35

mark them. On the 3d, 4th, and 5th of February, the price for carriage was on the rise, from $2.75 to $3 per 100 lbs., and it continued to rise until it got to $3.75 and $4 for 100 lbs. in eight or ten days. I know that Metzgar had to pay more afterwards to send the said goods to Pittsburg, after the said Stover had failed to take them, and in consequence of the delay in getting the said goods or loads forwarded in the usual time. It was a serious loss not only to me, but an injury to the business character of Metzgar. I was present when the said Metzgar paid the advance on carriage and dockage to James Bingham, of the city, as per the receipts marked B. and C. and hereto attached, which receipts I saw said Bingham sign."

The plaintiff next read the deposition of George Emerick as follows : " On the 8th day of February 1839, John White & Co., of Philadelphia, of which firm I am a member, forwarded by their line, by direction of John Metzgar, three car-loads of goods, viz. one load for Michael Stover, one load for Joseph King, and one load for Peter Gise, all of which loads were delivered, agreeably to the order of said Stover, King, and Gise, to Messrs Futhey & Smith, Wrightsville, York county, Pennsylvania, from which they were to be loaded into their respective wagons. In consequence of the said Stover, King, and Gise not calling for their goods, agreeably to promise, and paying the freight and charges thereon, we, the said firm of John White & Co., have demanded of John Metzgar the prompt payment of $130.95, being the amount of our freight and charges thereon, which amount he paid, as appears by our receipt D. From the time we were called upon by Mr Metzgar to the delivery of the goods at Wrightsville, as short a period of time as possible was allowed to elapse; sometimes it takes from five to six days to collect four loads of goods."

The receipt was for $130.95 in full for freight and charges on three loads of goods, sent by his direction to Wrightsville, for Michael Stover, Joseph King, and Peter Gise.

The plaintiff then called John Futhey, who testified as follows:

John Futhey. I received this letter from John Metzgar to Futhey & Smith, dated 8th of February 1839, containing three bills of lading, for those three men, Stover, King, and Gise. I received it in the due course of mail. We, Futhey & Smith, received the three loads of goods mentioned in the letter at Wrightsville. I have received many letters from Metzgar in the course of a business correspondence, and know his hand-writing, and I believe this letter and signature to be in his hand-writing.

Letter read in evidence, to wit :

*Philadelphia, Feb.* 8, 1839.

Dear Sir—Enclosed I *sende* to your care the bills of three loads *witch* will *bee* up on Monday next *witch* I hope you will be very *perticttuler* with and keep *eatch* load separate according to the

[Stover v. Metzgar.]

bills and numbers of *eatch* load—and settle with the wagoners according to each bill of his load and also with the agent of the cars at 47 cents per hundred—and to charge the wagoners nothing for loading as you are to charge it to John White & Co— you will *bleace* to settle according to these bills, as I believe I made a *litle* mistake on the manifest but is not *mutch* as you will perceive. I have been *pertickular* in stating every thing correct on *eatch* bill that you may have no trouble this time.

Respectfully yours,
JOHN METZGAR.

No. 1.—1 load No. 1. for Peter Gise.
No. 2.—2 Joseph King.
No. 3.—3 Michael Stover.

Each man's name on his bill. I have written to these men to be at your place on Monday.

Mr Futhey & Smith, Wrightsville.

Witness continues. Four or five days after receiving these loads, I wrote a letter, by Mr Trimmer, to Michael Stover, informing him of their arrival. I did not know where he lived until Trimmer told me. James Bell took one load of the goods, and James Bingham, through his agents, the other two.

I sent no word to Gise or King. I was governed by the letter in what I did. The three waybills were separately made out for the three men mentioned in the letter. This is the letter I wrote by Trimmer, dated 15th of February 1839, and post-marked same date.

Letter here read by defendant, who produced it, to wit:

*Wrightsville, February* 15, 1839.

Mr Michael Stover,

Dear Sir,—We have had three loads in the warehouse since Tuesday for you, Peter Gise, and King, sent here by John Metzgar, which you will come for as soon as possible. Yours, &c.

ISAAC TRIMMER.

You had best leave home this evening, so as to be here to-morrow. The loads are at Futhey & Smith's warehouse.

Now if any doubt remained after reading the previous testimony, this seems to remove it. He directs Futhey twice to be particular; to keep each load separate, according to the bills and numbers of the load; to settle with the wagoners according to each bill; a separate bill for each load, and each load numbered; and each man's name on his bill; and he had written *to these men.* After all this, if Stover had called, Futhey could not have given him one package not in the bill marked with his name; only one load was sent to or intrusted to his care; no matter what reason induced Metzgar to direct each load separately, and to give such pointed directions to deliver each according to the bill; he cannot

reject all his own directions and go back to Stover's letter and charge him with the whole on that.   Metzgar himself did not act as if Stover was the sole contractor, and was very careful that Futhey should not so consider him or intrust all the loads to him. Stover is only answerable for misconduct as to what he was intrusted with; what he could have got if he had. been at Wrightsville when the goods arrived to Futhey & Smith.

Some other matters were discussed a little, below and here; an usage of trade is not like a custom; it is often limited to those who are engaged in a particular trade; if it is well known, and has been long and generally acted on by all parties, it is considered as entering into all contracts which come within it; it, in fact, tacitly forms a part of the contract; it is proved by such witnesses as know it; and if the jury believe in the custom and the veracity of the witnesses, and their knowledge of the usage, it generally settles so much of the cause as depends on it.   I say generally it does so.

We have in this case the assertion of Metzgar that he wrote to Stover 8th of February; and the oath of Morehead that he saw him write and seal the letter on that day; but we have no proof when it was put into the post-office; it would reach its destination, at farthest, on the second day after it was put into the post-office.   We have the positive oath of Snodgrass, the post-officer, that Stover called daily for a letter until the 13th of February, and that no letter came for him until the 17th of February, late at night, and Stover got it next day.   Here then was a delay; before Stover knew, or could know any thing, the goods would arrive at Wrightsville, say 10th or 11th.   Stover knows nothing of it until the 17th or 18th; here is a delay of six or seven days, not occasioned by him; ought he to be charged so much per day for each of these days? or ought Metzgar to answer for this much? Carriers are subjected to very strict law, and we are disposed to administer it strictly; but I do not know that justice or policy requires that they should answer for delay not occasioned by them, or for not carrying what was never put under their care or control.

Judgment reversed, and a *venire de novo* awarded.