## National Surety Company v. Schultz.

*Principal and surety—Indemnity agreements—Second bond—Conclusive-ness of vouchers.*

1. Where an employee agrees in writing to indemnify a surety company on a bond given to his employer to indemnify such employer against loss by larceny or embezzlement by the employee, and the agreement stipulates that the indemnity shall be "in any amount the employer may desire," and "to such extent and in such forms as may be agreed upon" between the employer and the surety company, the latter may execute a bond for $500, and, subsequently, without the consent of t ae employee, increase the amount to $2000.

2. A provision in such a contract that vouchers showing payment by the surety company in good faith of claims under the bond shall be conclusive evidence of the liability of the employee to the surety company, is not against public policy, and will be enforced.

Statutory demurrer. C. P. Lehigh Co., Oct. T., 1922, No. 93.

*Aubrey, Steckel & Senger,* for plaintiff.

*Dallas Dillinger, Jr.,* for defendant.

RENO, J., Feb. 5, 1923.—On Dec. 17, 1919, defendant executed a sealed instrument called an "employee's statement," directed to plaintiff, the pertinent provisions of which follow:

"The undersigned hereby agrees that you may indemnify the employer hereinafter named in any amount the employer may desire in favor of Railway Audit and Inspection Co. (employer) to such extent and in such form as may be agreed upon between you and the employer in respect of the acts of the undersigned in said employer's service as inspector at Philadelphia, in the State of Pennsylvania, or in any other position in the employer's service to which the undersigned may be appointed, and hereby affirms that the following answers are the truth without reservation, and that they are made to induce the National Surety Company to indemnify the said employer as hereinbefore mentioned."

Then follow thirty-two questions and answers which are not material to the issue now before us. The statement concludes:

"For good valuable considerations, the undersigned hereby agrees to indemnify and save harmless the said National Surety Company from and against any and all loss, damage, fees or expense which it may incur or sustain by reason of having agreed to indemnify as hereinbefore set forth against the acts or omissions of the undersigned in the positions mentioned and referred to or in any other position that may be filled by him, and to make good and reimburse to the company all sums of money which it may pay or become liable to pay in consequence of such agreement of indemnity. . . . The undersigned also agrees that the vouchers or other proper evidence showing payment by the company of any claim, demand, loss, damage, fees or expenses in connection with any such indemnity in his behalf shall be conclusive evidence

of the fact and amount of liability in that respect of the undersigned to the company, provided that such payment shall have been made by the company in good faith, believing it was liable therefor."

On March 3, 1920, plaintiff executed its "guarantee bond" to the Railway Audit and Inspection Company, agreeing to indemnify any loss, not exceeding $500, sustained by the employer "by reason of any act of larceny or embezzlement" of defendant committed after Dec. 15, 1919, and during the life of the bond. This bond was signed by both plaintiff and defendant. On March 4, 1920, by a rider attached, signed by plaintiff, but not by defendant, the amount of the guarantee bond was increased to $2000, effective as of March 1, 1920. In passing, as an illustration of the care with which plaintiff company transacts its business, we note that the guarantee bond became effective as of a date prior to the date of the application, and the rider became effective as of a date prior to that of the original "guarantee bond."

The plaintiff's statement of claim, after averring the facts substantially set forth above, alleges that "defendant applied to his own use $1500 of the funds of his employer;" that "the plaintiff paid to said employer the sum of $1500, a copy of the check or voucher given and cashed in payment of said liability" being attached; that "said payment of $1500 was made by plaintiff to defendant's employer, believing that it was liable therefor," and that "plaintiff has incurred liability for fees to be paid to its attorneys in the prosecution of this cause in the amount of $200." The suit is for $1700.

The case comes before us upon a statutory demurrer, which raises several questions, only two of which were pressed at the argument, and which may be summarized as follows: First, that the increase of the bond from $500 to $2000 having been made without defendant's direction or consent is not binding upon him, and that, therefore, his liability to plaintiff is, in no event, more than $500; and, second, the bond having been given to cover acts of larceny and embezzlement, defendant must reimburse plaintiff only for moneys paid by it for losses sustained through such acts, and the statement, not alleging felonious or criminal acts, is insufficient to support a judgment against him.

Recurring to the first contention, it will be observed that defendant directed plaintiff to indemnify defendant's employer "in any amount the employer may desire." Therefore, if plaintiff had, in the first instance, issued its bond for $2000, its action would not have been subject to objection. Can defendant complain because plaintiff has by two separate acts done that which admittedly it could have done by one act? That is, is the statement a direction to plaintiff to furnish only one bond or as many bonds as defendant's employer desired? In view of the general direction in the statement to plaintiff to indemnify defendant's employer "in any amount," and "to such extent and in such forms as may be agreed between" employer and plaintiff, and "in respect of the acts of" defendant, acting as inspector for employer, "or in any other position" to which defendant "may be appointed," it is difficult to escape the conviction that the parties intended a continuing authorization to plaintiff by defendant to furnish bonds during the period of defendant's employment. (To the extent that this conclusion is based upon a consideration of the meaning of "any," compare Tischler v. Hofheimer, 83 Va. 35; 4 S. E. Repr. 370; Winnebago Bank v. Hustel, 119 Iowa, 115; 93 N. W. Repr. 70; Newcomb v. Kloeblen, 77 N. J. L. J. 791; 39 L. R. A. 724.) This conclusion is drawn from a consideration only of the terms of the agreement itself, assuming that there are no doubtful expressions in it requiring explanation by extrinsic evidence. If it be conceived that, for the proper construc-

3 D. & C.

tion of the instrument, the circumstances under which the parties contracted, the negotiations which led up to the contract or other surrounding circumstances are to be considered (Stover *v.* Metzgar, 1 W. & S. 269; Bole *v.* New Hampshire Ins. Co., 159 Pa. 53; Wilson *v.* Wernwag, 217 Pa. 82), it will be incumbent upon defendant to allege and prove these factors: Morris's Appeal, 88 Pa. 368; Miller *v.* Fichthorn, 31 Pa. 252; Foster *v.* McGraw, 64 Pa. 464; Denniston *v.* Schaal, 5 Pa. Superior Ct. 632.

The second contention disregards the stipulation in the "employee's statement," whereby defendant agreed that the "vouchers . . . showing payment by the company of any claim . . . shall be conclusive evidence of the fact and amount of liability . . . of the undersigned to the company, provided that such payment shall have been made by the company in good faith, believing it was liable therefor." It is upon that stipulation that plaintiff bases its right to recover, and, unless that agreement contravenes the public policy of the Commonwealth, we are powerless to relieve defendant, however vicious or unconscionable it may be.

Plaintiff's position does not invite judicial approbation. Although it indemnified the employer only against defendant's acts of larceny or embezzlement, it now seeks recovery from defendant upon the allegation that he "applied to his own use . . . of the funds· of his employer," which is certainly not an averment of larceny or embezzlement: Reed *v.* Fidelity and Casualty Co., 189 Pa. 596. Indeed, it urges that whether defendant committed the stipulated criminal acts is altogether beside the point; that it is entitled to recover if, believing that defendant had committed such acts, it paid the claims of his employer. Further, it holds that its vouchers are conclusive evidence of the fact and amount of defendant's liability. Thus, even if defendant is entirely innocent of all criminal, or even civil, wrong, he cannot controvert the vouchers and is limited in his defence to an attack upon the good faith of the plaintiff. He is concluded, not by his acts, but by the judgment of plaintiff's adjuster, who, for all that we know, may be ignorant of the law and deficient in weighing evidence. Yet if such an one investigates the facts and forms a belief that his company is liable, his belief transforms the vouchers into evidence which defendant may not controvert. Such a palpably unjust provision administers a shock to the judicial mind which is not assuaged by the sedative assurance that "without such a stipulation guarantee companies could not safely do business anything like as cheaply as they do" (Guarantee Co. *v.* Pitts, 78 Miss. 837; 30 South, 758), as though guaranty insurance had become a prime favorite of the law: *Cf.* Brown *v.* Title Guaranty and Surety Co., 232 Pa. 337; Young *v.* American Bonding Co., 228 Pa. 373; Philadelphia *v.* Fidelity and Deposit Co., 231 Pa. 208. It is not surprising that the courts of other states, apprehensive of the harmful potentialities latent in such stipulations, have pronounced such provisions contrary to public policy because they oust the jurisdiction of their courts: Fidelity and Casualty Co. *v.* Eickhoff, 63 Minn. 170; 65 N. W. Repr. 351; Fidelity Co. *v.* Crays, 76 Minn. 450; 79 N. W. Repr. 531; Fidelity and Deposit Co. *v.* Nordmarken, 32 N. Dakota, 19; 155 N. W. Repr. 669; Guarantee Co. *v.* Charles, 92 S. Car. 282; 75 S. E. Repr. 387.

Were we free to indulge our own inclinations, we should like to follow those who hold that such a stipulation, constituting one party to the contract the sole and supreme judge of a right of action arising out of it, is void because contrary to the public policy of the State. But we are restrained by a long line of Pennsylvania cases which distinctly teach. that parties may agree to oust the jurisdiction of our courts. Parties have a right to agree

that the decision of an engineer, an architect or an umpire shall be final and conclusive in any dispute that may arise concerning the contract, and such ageement will be enforced even though the engineer, architect or umpire is himself a party interested in the outcome of the controversy: Monongahela Navigation Co. v. Fenlon, 4 W. & S. 205. They have a right to agree that a certificate issued by the agent of one of the parties shall be conclusive evidence, and such agreement will be enforced against both parties unless impeached by proof of fraud, collusion or caprice: Bizet v. Smith, 272 Pa. 31. These two cases mark the beginning and end of a period of eighty years, and between them is a long and consistent chain of adjudications ("no lawyer in the State is unfamiliar with them," says the Supreme Court in Adinolfi v. Hazlett, 242 Pa. 25, 28) holding, in effect, that the jurisdiction of the courts is not ousted by contract stipulations making certificates conclusive evidence of the fact and amount of liability created by such contracts. Of course, if the certificate of the agent of one party can be upheld as conclusive evidence, there is no reason why a voucher cannot likewise be lifted to the realm of incontrovertible facts. Indeed, the right of the people of Pennsylvania to select final, extra-judicial tribunals for the decision of their controversies is so strongly entrenched behind constitutional bulwarks that even the hand of the legislature is impotent; and an act of the assembly which sought to preserve the jurisdiction of the courts against the encroachment of conclusive pronouncements of conventionally selected judges was emphatically declared unconstitutional: Adinolfi v. Hazlett, 242 Pa. 25. It would be mere arrogance for us to attempt that which even the legislature cannot accomplish, and we must allow the defendant to abide by the stipulation into which he entered.

And now, Feb. 5, 1923, the affidavit of defence raising questions of law is overruled.

From James L. Schaadt, Allentown, Pa.