# City of Philadelphia, Trustee, v. N. Snellenburg & Company, Inc.

*J. P. Gaffney*, for plaintiff.

*White & Williams*, for defendant.

JONES, J., December 16, 1947.—This is an action in assumpsit. The plaintiff seeks to recover from the defendant the sum of $1,306.20 with interest from July 9, 1946, the date of payment by the plaintiff after demand upon and refusal of payment by the defendant. The said sum of $1,306.20 is the amount of the sewer rental which was imposed upon the plaintiff as the owner of premises situate in the City of Philadelphia for the year 1946 under authority of an ordinance of the Council of the City of Philadelphia approved April 20, 1944, which premises prior to, throughout and subsequent to the said year were in the possession, occupancy and use of the defendant under the terms and conditions of a written lease between the plaintiff and the defendant dated April 18, 1942.

The case was tried by the court without a jury under authority of Section 12 of the Act of July 12, 1913, P. L. 711, as amended by the Act of June 20, 1919, P. L. 515, 17 P. S. 695. In such non-jury trial the trial judge

functions as a jury and his finding is as the verdict of a jury.

At the conclusion of the presentation of evidence counsel for the parties presented various requests.

Subsequent to the date of trial a "Stipulation And Agreement" entered into between counsel for the plaintiff and counsel for the defendant with noted objection thereto by the latter was presented to the court and filed of record.

Upon August 28, 1947 the trial judge made a finding for the plaintiff in the sum of One Thousand Three Hundred and Ninety-Five Dollars and Twenty-four Cents ($1,395.24). Coincident therewith the trial judge denied a request for finding made by counsel for the defendant and filed of record his rulings upon the objections and the motion of counsel for the defendant reported in the Notes of Testimony and upon the objection noted by counsel for the defendant to the "Stipulation And Agreement".

Thereafter in due course the defendant filed a motion for a new trial and a motion for judgment non obstante veredicto.

Written briefs having been filed in behalf of both parties, the defendant's motions were dismissed and judgment entered for the plaintiff in the sum of $1,395.24 upon the finding of the trial judge made August 28, 1947 with interest thereon from the date of finding.

The basis of the claim of the plaintiff is that the said sum of $1,306.20 is a part of the minimum annual rental stipulated to be paid under the terms of the said lease for the year 1946. The defendant denies such liability, contending that no language of the lease binds the lessee to pay a sewer rental.

It is thus seen that the question involved is the interpretation and construction of the written lease; the interpretation, that is, the determination of the true meaning of the writing and the construction, that

is, the application of such true meaning to the facts out of which the question involved arises.

When a court is confronted with such question it is not only permitted, it is required by way of preface to know the facts as to the relationship which existed between the parties prior to and at the time the writing was executed, their position, the circumstances under which it was entered into, the character of the subject-matter of the lease, its qualities and conditions, and the conduct of the parties expressive of the interpretation and construction which they placed upon the writing. This conclusion is sanctioned by judicial decisions to a few of which reference will be made.

In the case of Barnhart v. Riddle, 29 Pa. 92 (1857), it was said (96, 97):

"It is the dictate of common sense, and therefore a rule of law, that every written instrument is to be interpreted according to the subject-matter, and yet the nature and qualities of the subject-matter are seldom fully stated, often only alluded to in the writing. . . . Many other cases might be cited from the books to mark the distinction, too often lost sight of by counsel in the zeal of an argument, between evidence to alter the language of a written instrument, and evidence to define the position of the parties, and the nature and condition of the subject contracted about. So long as parties call on courts of justice to administer their contracts, they must expect them to be administered as nearly as may be according to the very intention and understanding that was present in the minds of the parties when the contract was signed, and to this end courts take the language employed and apply it to the surrounding circumstances, exactly as they believe the parties applied it. In other words, they hold to the rule that plain and unequivocal terms shall not be altered by parol, but that such explanations of the subject-matter may be proved, as shall give those terms the intended effect."

In the case of Miller v. Fichthorn, 31 Pa. 252 (1858), it was said (257):

"In the very nature of things, the judge must receive, by admissions or by testimony, all the information that is necessary, in order to put him into a position to interpret and construe the writing with intelligence; that is, to apply it to persons, things, and events, according to the intention under which it was written.

"This proposition is applied to every kind of writing, ancient and modern, legal and moral, historical and scientific, and is often expressed in some such terms as these:

"The interpreter must, as far as possible, place himself intellectually in the same circumstances of time and place, as the author of the writing was in when he wrote it; in order to enter into sympathy with him, and be able to reveal the thought, which ignorance of those circumstances must render indistinct and doubtful."

In the case of Denniston v. Schaal, 5 Pa. Superior Ct. 632 (November 8, 1897), it was said (636):

". . . these general principles are well established; that the instrument is to be construed according to what is fairly to be presumed to have been the understanding and intention of the parties, without any strict technical nicety; that the language should not be strained beyond its natural import for the purpose of enlarging the guarantor's liability; and that in ascertaining what was the understanding of the parties the circumstances accompanying the whole transaction are to be looked to: . . ."

Precisely formulated the question involved is:

Is the rental or charge imposed for the year 1946 under and by authority of an ordinance of the Council of the City of Philadelphia approved April 20, 1944 upon the plaintiff, the owner of properties leased to and occupied by the defendant, for the use by the lessee of the sewers, sewage system and sewage treat-

ment works owned, maintained and operated by the City of Philadelphia, a component of the compound of charges determining the amount of the minimum annual rental contracted to be paid by the defendant, the lessee, under the terms of the lease dated April 18, 1942?

The controlling facts are not in dispute. The validity of the ordinance, the rendition of the service, the amount of the charge for the use in the year 1946, the character of the service charge as a use rental are not in question.

The provisions of the lease involved read as follows:

"TO HOLD for a term of sixteen years commencing on the first day of February, 1942, YIELDING AND PAYING therefor unto the said Lessor, its successors and assigns an annual rental as follows:

"(1) A minimum annual rental (sometimes hereinafter referred to as 'minimum rental') of $580,-000.00 payable in equal monthly instalments on the last day of each and every month of the term of this lease, the first payment to be made February 28, 1942, it being further mutually understood and agreed that the said minimum rental of $580,000.00 is to be adjusted as follows:

"(a) To be increased or decreased as the total sum of

"(1) City and School taxes and any other taxes or charges of like nature which may be imposed on premises 1100-1142 Market Street and 1100-1124 Girard Street, or either of them, during the term of this lease,

"(2) Fire insurance premiums necessary to insure the buildings and improvements on the said premises 1100-1142 Market Street in the amount of $800,000 and 1100-1124 Girard Street in the amount of $750,000

"(3) Annual Minimum Water Service Charge for said Market Street and Girard Street premises

"is increased or decreased as compared with the total

sum of like charges for the year 1941 agreed to be as follows:

"City and School Taxes        $222,803.88
Fire Insurance Premiums      1,285.60
Minimum Water Service Charge    3,870.00

Total     —     $227,959.48

"(b) To be reduced at the rate of $20,000.00 per annum from the commencement of this lease on February 1st, 1942 until such time as the premises 1119, 1121, 1123, 1125, 1127 and 1129 Chestnut Street are ready for occupancy by the Lessee." [1]

The title and the provisions of the ordinance upon which the defendant has grounded its claim of exemption of liability pertinent to the question involved are:

## "AN ORDINANCE

"Imposing an anual sewer rental or charge; fixing the rates, and providing for the collection and administration thereof, and providing penalties."

Section 1 reads as follows:

"SECTION 1. *The Council of the City of Philadelphia ordains,* That there is hereby imposed an annual sewer rental or chárge for the use of the sewers, sewage system and sewage treatment works of the City of Philadelphia upon the owners of properties served thereby, at the rates hereinafter set forth."

Section 2 reads in part as follows:

"SECT. 2. GENERAL RATES OF RENTAL. The sewer rental hereby imposed shall be an annual charge based upon the water consumption of the properties served as measured by the charges for water supplied for the then current calendar year, and shall be amounts .equal to the following percentages of the

---

[1] Paragraph "(b)" is not pertinent to the issue and was so recognized at the trial. It was a provision for a temporary situation. The premises specified were made "ready for occupancy by the Lessee" and occupied by it.

charges for water computed at the rates established by, or fixed in accordance with, the provisions of the ordinance approved December 2, 1916, entitled 'An Ordinance regulating appliance and meter charges for water, . . .' . . ."

The remaining portions of Section 2 and Sections 3 to 6, inclusive, treat of details such as rates of charge, use of the system, the authority of the Chief of the Bureau of Water in fixing charges, the use of devices in the measurement of water, etc. Section 7 fixes the "Period When Rental Shall Become Effective and Temporary Rates."

Section 8 reads as follows:

"SECT. 8. TIME AND METHOD OF PAYMENT. All sewer rentals shall be due and payable at the same time that water rentals are now due and payable. They shall be included in the same bills and shall be collected at the same times and in the same manner and be subject to the same penalties as the charges for water. Said payments shall apply to all properties subject to the payment of sewer rents without regard to the source of the water used by them."

Section 9 provides for the apportionment for the use during a part of a year.

Section 10 reads as follows:

"SECT. 10. ADMINISTRATION. The Receiver of Taxes is hereby charged with the duty of collecting all sewer rents and is authorized to adopt such regulations with respect thereto as may in his discretion seem fit and proper."

Section 11 reads as follows:

"SECT. 11. COLLECTION OF DELINQUENT RENTALS. It shall be the duty of the Department of Law, when requested by the Receiver of Taxes, to proceed for the collection of delinquent sewer rentals, together with all penalties, interest, and costs accrued thereon, and to enter liens and take such other action as may be authorized by law or ordinance. All sewer

rents not paid on or before the end of the current calendar year shall be deemed to be delinquent for the purposes of this section."

Section 12 makes provision with reference to "Properties Not Affected."

Section 13 headlined "CONSTRUCTION" declares the rule to be applied in the construction of the ordinance in the event of any portion thereof being unconstitutional, illegal or invalid.

The similarity of the sewer charge imposed by this ordinance upon owners of property to a tax upon the property is so marked, not only in its mandatory imposition, the effect of its non-payment and consequent denial of service rendering the property useless and profitless, but also in the administrative provisions of the ordinance, as to place it in the category of charges defined in the quoted lease provision, "City and School taxes and any other taxes and charges of like nature which may be imposed on premises . . .", as a charge of "like nature" and to classify it as a substitute in lieu of the tax theretofore imposed for the same service.

Admittedly the sewer service for the year 1946 upon which the charge is based was similar to that rendered to the lessee, occupant as lessee of the premises, prior to, at the time of and subsequent to the effective date of the instant lease and of the ordinance. The ownership and operation of the sewage system were the same throughout the said period. Its maintenance, operation costs, improvements and extensions were borne and paid by its owner, the City of Philadelphia. Prior to the effective date of the 1944 ordinance no charge *as such* for the rendition of the service was made or imposed upon the owners of premises using the service. The funds for the payment thereof were provided by taxation. All such fund requirements were included within the tax budget for taxation purposes

for each year and payment thereof collected from the owners of the property subjected to tax.[2]

That taxes, the amount thereof and the liability therefor were and are a designated factor in the method devised and provided to determine the minimum annual rental contracted to be paid by the lessee, affirmatively appears. This method is of the subject-matter of the lease, an essential ingredient of the lease contract. The rent is the consideration for the lease contract.[3]

---

[2] That the sewers, sewage system and sewage treatment works were and are owned by the City of Philadelphia and the expenses of maintenance thereof were paid out of the taxes raised by the general tax levy prior to the imposition of the sewer rental or charge for their use by the ordinance approved April 20, 1944, are facts of which judicial notice has been taken.

In the opinion in the case of Williams v. Samuel et al., 332 Pa. 265 (December 5, 1938), it was said (pp. 280, 281):

"The City Solicitor having stated in open court that a rental charge would be made for sewers sufficient to make the sewer projects self-liquidating, and also to avoid requiring any contribution out of the general tax levy, the judgment of this court is rendered on the express condition that such sewer rental shall be established and collected, and further that such sewer rental, together with all water receipts, shall nevertheless be used by the City in its budget as factors in estimating its gross current revenue."

See also what is said as to the cost and method of maintenance of the water supply system and the sewer system of the city on page 268 of the report of the opinion.

Attention is called to the opinion in Hamilton's Appeal, 340 Pa. 17 (October 28, 1940), and the opinion in Philadelphia's Petition, 343 Pa. 47 (September 29, 1941), and the decision in the case of Gericke et al. v. Philadelphia et al., 353 Pa. 60 (October 30, 1945), wherein the sewer rental ordinance approved April 20, 1944, was held valid, the court saying in its opinion, inter alia (p. 62):

"The Commonwealth requires the city to make improvements and additions to its sewer and sewage disposal system. Hitherto, the city has furnished sewerage service out of general taxes without direct charge to the user; it has become necessary now to make a charge."

[3] While it partakes of the nature of a grant and of a contract, a lease of real estate for a term of years has been defined to be "A contract for the possession and profits of lands and tenements on the one side, and a recompense of rent or other income on the other. Bac. Abr. Lease *in pr.*; . . ." Bouvier's Law Dictionary, Rawle's 3rd Revision, Vol. 2, p. 1887.

Under the method devised and the conduct of the parties thereunder during the period of the lease to and including the time of trial, as the taxes increased beyond the standard year the minimum annual rental correspondingly increased; as the taxes lessened below the standard year similarly the rental lessened, the *net* minimum annual rental remaining constant despite any fluctuation in the amount of any component of the compound of minimum rental charges.

The sum of $580,000.00 is a fixed amount to be paid solely in a year such as that of the standard year 1941 wherein the total sum of the "City and School taxes and any other taxes or charges of like nature", the stated fire insurance premiums and the minimum water service charge does not exceed or is not less than the respective amounts paid in such standard year. If any amount in any year is less, the $580,000.00 is correspondingly reduced, if in excess, the $580,000.00 is correspondingly increased. That which remains constant is the *net* minimum annual rental, the difference between $580,000.00 and the standard year total of $227,959.48 or the sum of $352,040.52. The so-called minimum annual rental of $580,000.00 is a variable. The *net* minimum annual rental of $352,040.52 is a constant, fixed and unalterable except by agreement of the parties. It is an annual sum required to be paid in addition to the total sum of the stated charges. The primary liability for these charges is that of the owner-lessor. The lessee, however, has contracted in express terms to recompense the lessor therefor in the precise amount by way of annual rental determined by the amount of the constituents specified in the formula. Any increase or any decrease of the said constant, the *net* minimum annual rental of $352,040.52, varies the consideration of the lease contract, constitutes a violation of the lease by reason of which the injured party has a right of remedial action.

Every item which enters into the annual budget of city expenses the payment of which is made out of the general tax levy revenue determines the amount of taxes required for the year. The cost of sewer service was such an item and known to be such. Accordingly the lessor and the lessee adopted the legally appropriate means to provide for the payment by the lessee of the sewer service charge, be it imposed by taxes or by "charges of like nature", and they expressed their understanding and agreement in plain language. "Charges of like nature" are not "taxes". Were they so, why the language? "Charges of like nature" and "taxes" are not identical. Similarity is not identity.[4] The "rental" imposed by the ordinance and denominated therein a "charge" falls within the category of "charges of like nature" and is a substitute in lieu of the tax theretofore imposed and is recognized as such in Gericke et al. v. Philadelphia et al., supra. Prior to and at the effective date of the lease there was no sewer service rental charge for use of the sewage system. It was, as stated, an item of taxation. It was not until the ordinance approved April 20, 1944 that judicial approval of the validity of the proposed sewer service charge was given, as the hereinbefore cited decisions disclose. As a tax or a charge upon the leased property, before and after the enactment of the ordinance, the cost of the rendition of sewer service to the property was and is within the category defined in the lease, to wit, "City and School taxes and any other taxes or charges of like nature". What language more aptly and manifestly expresses the fact that the sewer service charge upon the property was to be paid by the lessee throughout the lease period whether im-

---

[4] "The Law of Identity" is a primary law of thought and has been defined "Whatever is, is". This, it has been said, "may be regarded as the best definition we can give of identity or sameness". ("Elements of Logic". Jevons-Hill.) ". . . everything is identical with itself".

posed as a tax, as then it was, or as a charge "of like nature" as imposed by the ordinance?

Parties to the lease must be held to have intended the consequences of the operation of its provisions and their conduct thereunder. The taxes and like charges were and are imposed upon the lessor by the city and by the lessor expressly contracted to be recovered from the lessee by way of rental which the lessee with knowledge of their variable nature due to varying city liabilities and expenditures from year to year, expressly agreed to pay in an annual amount determined by the formula or calculating device which was based upon and made necessary by the varying character and varying amounts of the budget items then paid from city funds. To say that the cost of the sewer service was not then paid by taxation is to contradict the obvious. To say that the parties contracted without knowledge of the character of tax liability and of the elements determinative of its amount is to contradict the language of the lease and the conduct of the parties in compliance with its provisions. To say that the "taxes" and "charges of like nature" were not and are not a constituent of the rental is to nullify the lease provision.

Now, if this be true, how and by what means in conformity with the lease contract is the lessee relieved from the lease obligation with consequent reduction of the rent? By councilmanic ordinance, says the lessee. That this is not the effect of the ordinance, not the intent of the enactment and could not be its effect by operation of law is self-evident. The reciprocal obligations of the parties are determined by the lease, not by the changed economic policy of the City Council with reference to the same subject-matter, whereby the payment for the use of the same service is exacted from the property owner by a so-called use charge instead of a tax for use.

It is indisputable that the elimination of the cost of the maintenance of the sewage system from the taxation budget and its collection from property owners as part of the annual property tax and its imposition as an annual use "rental or charge upon the owners of properties served thereby" did not alter the lease relationship of the parties, did not alter the use of the sewer service by the lessee, did not vary the nature of the service rendered to and used by the lessee.

Counsel for the defendant-lessee argues that since the charge in question is in law a use rental and since it has been judicially determined that such charge is not a tax, therefore, despite the fact that the same service is rendered subsequent as prior to the effective date of the ordinance, despite the fact that prior thereto the sewer service cost was included in the city yearly tax budget and paid as an element of property tax, nevertheless the fact that it is imposed as an annual use "rental or charge" eliminates it from the leasehold provisions, thereby making it the obligation of the lessor alone with consequent reduction of the stipulated rental. Counsel argues that to hold the lessee liable is to alter and vary the terms of the written instrument, seemingly because no such terms as use rental or sewage service charge or the precise terms "sewer rental or charge" are to be found in the lease. What has been said hereinbefore is a sufficient answer to such contention.

It is not impertinent to state at this point that by this action at law the lessee is called upon to pay that which it contracted to pay, the benefit of which it continues to receive, from the payment of which it has not been released by the lessor and cannot be released by councilmanic enactment.

The application of the parol evidence rule is not involved. We are dealing with the subject-matter, not the terms of the lease. The argument of defendant's counsel is self-destructive. To give it effect is to hold

that the consideration for the lease as well as the terms expressing the intent of the parties can be altered, can be altered by councilmanic enactment, can be varied by those not parties to the lease. The argument "proves" too much. As defendant's counsel argues against the inclusion of the charge as an element in the determination of the minimum annual rental upon the ground that so to hold would be to alter the terms of the contract in violation of the parol evidence rule, counsel argues for release of the defendant from a theretofore admitted liability upon the ground that the ordinance does alter not only the terms but the subject-matter of the contract by removing from the taxation budget the cost of the service which the lessee was to pay under the terms of the lease and making it payable thereafter as a use rental or charge. Thus, so runs the argument, does this ordinance of City Council relieve the lessee from liability therefor as a portion of the lease rental. The lessee would alter the lease by councilmanic ordinance. If so, the repeal of the ordinance and a restoration of the prior method of charge for the same service would again alter the lease and impose admitted liability thereunder upon the lessee. Under the doctrine advanced on behalf of the defendant in support of its claim of exemption, as the City Council in its wisdom changes its economic policy it varies this and similar leasehold grants and contracts throughout this vast city. The thought that this could be is "a bit" startling.

"When all is said and done", what the defendant is endeavoring to do with judicial approval is to convert the constant, the said *net* minimum annual rental of $352,040.52, into a variable by reducing the stipulated annual rental by the varying amount of the annual sewer rental or charge and at the same time continue to receive the sewer service which it had contracted to pay as part of the consideration for the leasehold grant. To sanction such an interpretation

and construction of the lease is to alter its subject-matter and its terms by a reduction of the stipulated rental, thereby nullifying and making void the basic principle in accordance with which the lease writing was integrated and to which all other consideration payments are adjunct.

What has been said is based upon undisputed facts which establish the validity of the finding of the trial court and the consequent judgment for the plaintiff. This conclusion is not dependent upon the evidence to which the defendant made objection. The evidence presented at the trial and the stipulation were admissable for the purpose for which the trial judge admitted them. The rulings of record disclose that they were admitted for the purpose of defining "the position of the parties, and the nature and condition of the subject contracted about", "to give identity to the subject-matter and apply the contract to it". They were not admitted for the purpose of adding to, subtracting from, varying, altering or contradicting the terms of the written lease. That evidence of such undisputed facts was admissible for the purpose stated is supported by the hereinbefore cited decisions in the cases of Barnhart v. Riddle, 29 Pa. 92 (1857) ; Miller v. Fichthorn, 31 Pa. 252 (1858) ; Denniston v. Schaal, 5 Pa. Superior Ct. 632 (November 8, 1897). No subsequent decisions nullify or restrict the law declared in these cited decisions.[5] It suffices to say that the facts to the admissibility of which objection was made corroborate what has been said hereinbefore in support of the finding of the trial judge and the action of the court en banc dismissing the defendant's motions.

No error of law invalidates the finding of the trial judge, the dismissal of the motions filed by the defendant or the entry of judgment for the plaintiff upon the finding of the trial judge.

---

[5] See also the discussion of the parol evidence rule by Arthur L. Corbin, Professor of Law, Emeritus, Yale Law School, in "The Yale Law Journal", Vol. 53, No. 4, September 1944.