## Zuver et al. v. Bailey et al.

*John F. Budke* and *Frampton & Courtney*, for plaintiffs.

*Nesbit & Wasson* and *Robert M. Dale*, for defendants.

McCracken, P. J., June 15, 1954.—. . . We recognize this final disposition, so far as this court is

concerned, of the questions presented as a reversal in large measure of our former views. A further study of the evidence and the law convinces us that in our previous consideration of the factual situation presented and the law applicable thereto we were in error. We will discuss the salient features of this litigation in the light of the previously referred to study and consideration.

For the construction of the various instruments involving the land in dispute we must ascertain how they were considered by plaintiffs and their predecessors in title, as well also their characterization of the same in dealing therewith.

In Miller v. Fichthorn, 31 Pa. 252, at the beginning of the opinion we find this observation:

"This ignorance of the usual forms of doing a given business may often lead persons into difficulties; yet, when they are not strictly bound by them, and the form is free, the courts ought to endeavor to understand their transactions, whatever may be their form, and to execute their true intention."

The original instrument uses all the oft-repeated words creating a lease for the production of oil or a leasehold estate, viz.:

(a) An estate for years, which is inconsistent with the creation of an estate in fee either limited or otherwise;

(b) the payment of a royalty of the oil produced which is an indispensable provision of a lease for the purpose of operating for and producing oil;

(c) the requirement that the buildings on the premises be protected; oil and gas lines buried; restricted area around each well; right to use gas for operations on the premises and of free gas for the lessor if available, and other stipulations common to all instruments creating a leasehold estate.

It is likewise to be noted that in the indenture entered into between J. B. Stewart and W. B. Stewart, executors of the estate of Samuel W. Stewart, and F. C. Stewart, recorded in deed book 272, page 330, and quoted in full in disposing of defendants' execption no. 1, the first parties use this language: "Said second party agrees to drill one well every ninety days or *forfeit all of this lease. . . .*"

It is not denied by plaintiffs that for years in the settlement and distribution of decedents' estates an oil and gas lease or a leasehold estate has been considered personalty even before February 25, 1904, as will be demonstrated by an examination of the records in the office of the register of wills. Plaintiffs strongly urge that such a custom has not and cannot be established. This practice was not a custom. As earnestly argued by plaintiffs the laity knew nothing about such practice and one would scarcely expect the man on the street to be familiar with a concept of the law known only to the members of the legal profession. In support of this practice and concept defendants produced the testimony of three members of the local bar, each of whom has extensive experience in the orphans' court and in the examination of titles to real estate and the conveyance of the same, and in the settlement and administration of decedents' estates.

A comprehensive and exhaustive examination of this question was made by Hon. Allison Wade of Warren County in the estate of Samuel D. Tibbets at May term, 1949, no. 21, where the identical issue under consideration here was involved. Warren County has a large area devoted to the operation for and production of oil and with respect to the practice regarding the status of a lease for such purposes and the concept of the legal profession Judge Wade says:

"It is pertinent to inquire how the oil and gas industry and their experienced counsel over the years

treated an oil and gas lease. If oil and gas leases are, in legal contemplation, sales of real estate, then obviously attorneys, who have been familiar with the industry over the years, would draft instruments in proper form consistent with such theory. Yet an examination of the records in the oil and gas counties shows that the practice has been in transfers, large and small, to treat the lease as personal property. The leases themselves are often created without the signature of the wife, and assignments are made time after time with such words as 'assign, transfer and set over' without the signature of the wife and in the form of an assignment. Occasionally out of an abundance of caution, the leases and transfers do have the signatures of husband and wife, but the form and intent of the instrument is to treat the interest created or assigned as an interest of the lessee and are in fact so called. As said by Judge McCracken of Venango County in Hoffman et al. v. Irwin, 24 D and C 473: 'A very large portion of the land in this county has been and now is under lease for the purpose of producing oil or gas. Many of these instruments have been assigned and very rarely has the wife of the assignor been requested to sign, and in very few instances has it been considered necessary for her to execute the same since it has been the tacit opinion of the bar during the many years of activity in oil matters that there was no inheritable interest in oil leases.' "

We are convinced that an examination of the records in this county will disclose that the legal profession here well-nigh universally adopted the same view as expressed in the opinion of Judge Wade.

To accept the view advocated by plaintiffs would have a disastrous if not fatal effect on a large number of titles to real estate and cast a cloud thereon.

As a further interpretation of the view taken by the various owners of the interest here involved we note that in the inventory of the estate of Thomas W. Zuver, who died intestate on July 10, 1911, his holding was considered as personal property and so listed.

In further support of classifying the legal status of the instrument in question W. P. Arnold designates his transfer as "one-half of all my interest *in the within lease*" and he also gives "immediate possession of *this interest in this lease.*"

At the time of the above mentioned assignment even though W. P. Arnold was married and his wife living she did not join in the assignment.

As further evidence of Thomas W. Zuver's conception of the legal status of his interest, in a mortgage of that interest in an instrument dated August 4, 1906, and recorded August 6, 1906, in the office of the recorder of deeds and mortgages in mortgage book no. 107, page 252, he speaks as follows "undivided one-fourth (¼) part, portion and interest in all that certain leasehold and leasehold estate . . . demised and leased to F. C. Stewart by the executors of said Samuel W. Stewart by written indenture of lease recorded on August 4, 1904 in Deed Book 273, page 330"; and he further states "*which lease was assigned* by F. C. Stewart to W. Percy Arnold and William Arnold by written indenture of assignment dated November 16, 1904." He likewise characterized his interest as "the equal undivided part, portion and interest in said *leasehold and leasehold estate* having been assigned to said Thomas W. Zuver by said W. Percy Arnold by assignment in writing dated July 2, 1906 and recorded August 2, 1906 in Deed Book 287, page 22."

As heretofore stated this interest was considered personalty and listed among the assets of his estate

in the inventory thereof filed at R. D., August term, 1911, no. 19.

In the application for guardians of the estates of Nelson T. Zuver and Paul W. Zuver, minor children of Thomas W. Zuver, the property involved in this litigation was designated as personalty, as will appear by reference to O. C. D., August term, 1911, nos. 45 and 46.

We also note that Vern L. Zuver, an heir of Thomas W. Zuver, and a brother of plaintiffs, by indenture joined in by George H. Zuver, Wilbert E. Zuver and Lee R. Zuver, dated August 3, 1911, "released and quit-claimed" to Nellie L. Zuver "all our interest as children and heirs at law of Thomas W. Zuver in all the personal estate of Thomas W. Zuver, deceased." As a witness for defendants Vern L. Zuver testified that by the aforesaid conveyance he intended to and did convey to his mother all his interest in the leasehold involved in this action.

We have thus seen that not only did the original instrument contain all the specifications and requirements of the usual and customary lease for the production of oil, but that it was also treated as such by the several owners thereof.

In the oral argument and in their briefs plaintiffs strenuously insist that there is no custom by the legal profession in this county in which a leasehold or leasehold estate is in legal conception personal property and so regarded in the administration of a decedent's estate. As we understand defendants make no such contention. The proof offered was an attempt to show the concept of a leasehold regarding its nature as realty or personalty, and the general practice by the legal profession with reference thereto. We take judicial notice of the fact that this practice is evidenced by the inventory and appraisement of many

decedents' estates holding assets consisting of lease-holds for the production of oil on file in the register of wills office.

Plaintiffs' contention hangs on the word "grant" and is construed without reference to the interpretation placed on the instrument containing that word by the original parties and their successors in title, and also without giving consideration to the quite universal practice not only in this county but also in other oil producing counties when decedents' estates have oil leaseholds for administration and distribution. The larger and more potent factor is the disastrous and perhaps fatal results to many titles to real estate in this county if the construction advocated by plaintiffs were adopted. From the expression in Judge Wade's opinion hereinbefore quoted a like effect would result to real estate holdings in Warren County.

An examination of the decisions dealing with oil and gas leases by the appellate courts of the Commonwealth, also some of the lower courts, will disclose that the exact status of such leases is somewhat unsettled. This condition arises, no doubt, by an attempt to draw an analogy to, or make a comparison with, leases and contracts for the mining of coal. Coal is fixed in place while gas and oil move from place to place. They may be under a certain parcel of land at one time and due to pressure or other forces, either natural or artificial, migrate to other places.

The Supreme Court recognized this characteristic in Dark et al. v. Johnson et al, 55 Pa. 164, 168, in the following language:

"Oil is a fluid, like water, it is not the subject of property except while in actual occupancy. A grant of water has long been considered not to be a grant of anything for which an ejectment will lie. It is not a grant of the soil upon which the water rests: . . .

It would confound all legal notions were it held that an action can be maintained for the recovery specifically of the possession of a subterranean spring or stream of water, no matter whether the waters are mineral or not. There is a manifest difference between a grant of all the coal or ore within a tract of land, or even the grant of an exclusive right to dig, take and carry away all the coal in the tract, . . . and a grant of the waters in and on the tract. The nature of the subject has much to do with the rights that are given over it, and to us it appears that a right to take all the oil that may be found in a tract of land, can not be a corporeal right."

In Priddy v. Thompson, 204 Fed. 955, 960, the court entertained a like opinion and we quote:

"Oil and gas in the earth, unlike ore and coal, are fugacious and are not susceptible to ownership distinct from the soil. A grant by lease or deed of the oil or gas in a specified tract of land and of the right to occupy and use so much of the surface of the land only as may be necessary to prospect for and remove the gas and oil is not a grant of the oil and gas in the land, but of such a part thereof only as the grantee finds and reduces to possession. It vests no title to any oil or gas which he does not extract and reduce to possession, and hence no title to any corporeal right or interest. It is therefore insufficient to maintain ejectment by a grantee who has never taken possession of the land or prospected for or found any oil or gas under it."

In support of this proposition the decisions of the Supreme Court of this State are cited. . . .

### Final Decree

And now, June 15, 1954, it is ordered, adjudged and decreed that the title and right of possession in and to the leasehold and leasehold estate for the pro-

duction of oil and gas in and on the parcel of land situate in the Township of Allegheny, County of Venango and Commonwealth of Pennsylvania, bounded and described as follows: "Bounded on the north by lands formerly of St. Clair; on the east by land of Stewart estate, formerly Allender; on the south by Tionesta road; and on the west by Pithole Creek. Containing 125 acres, more or less, and being part of the 'farm known as the John Siggins Farm," created and established by the indenture between J. B. Stewart and W. B. Stewart, executors of the estate of Samuel W. Stewart, deceased, by recorded indenture dated February 25, 1904, and recorded in the office of the Recorder of Deeds of the County of Venango, on August 4, 1904, in deed book volume 273, at page 330, is vested as follows:

(a) Wilbert E. Zuver and George H. Zuver, plaintiffs, the undivided 1/72 interest, part, and share thereof, and

(b) James M. Bailey, Robert O. Landers and Joseph G. Mortland, defendants, the undivided 71/72 interest, part and share thereof.

It is further ordered, adjudged and decreed that plaintiffs are entitled to recover from defendants $90.96, together with costs of suit.

### Order

The prothonotary is directed to enter judgment in ejectment in favor of plaintiffs and against defendants for the undivided 1/72 interest, part and share in and to the premises and parcel of land described in the complaint filed by plaintiffs at the above number and term.

The prothonotary is further directed to enter judgment in favor of plaintiffs and against defendants in the sum of $90.96, together with costs.